IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

AMANDA BROWN, )
on behalf of N.E.L., a minor, )
)
        Plaintiff, )
)
        v. )   Case No. CIV-12-166-SPS
)
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration,[1] )
)
        Defendant. )

## OPINION AND ORDER

The claimant Amanda Brown requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying benefits for her son N.E.L. under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining that N.E.L. was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability for persons under the age of 18 according to the Social Security Act is defined as a medically determinable physical or mental impairment that causes marked

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

and severe functional limitations that can be expected to cause death or that have lasted or can be expected to last for a continuous period of not less than twelve months.  20 C.F.R. § 416.906.  Social Security Regulations implement a three-step sequential process to evaluate a claim for Child's Supplemental Security Income Benefits under Title XVI of the Social Security Act.[21]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries:  first, whether the decision is supported by substantial evidence; and second, whether the correct legal standards were applied.  *Hawkins v. Chater*, 114 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted].  The term substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and "the

---

[1]  Step one requires claimant to establish he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 416.971-416.976.  Step two requires claimant to establish he has a severe impairment or combination of impairments.  If claimant is engaged in substantial gainful activity or is found not to have a medically determinable impairment or the impairment causes a slight abnormality or combination of slight abnormalities resulting in no more than minimal functional limitations, he is considered not disabled.  At step three, claimant's impairment must meet, medically equal, or functionally equal the severity of an impairment in the listing of impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  A claimant suffering from a listed impairment or impairments that meet or medically equal the requirements of the listing or that functionally equal the listing and meet the duration requirement will be found disabled.  *See* 20 C.F.R. § 416.924(a)-(d)(2).

substantiality of the evidence must take into account whether the record detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias* 933 F.2d at 800-801.

## Background and Procedural History

N.E.L. was born on December 16, 1999, and was eleven years old at the time of the administrative hearing. The claimant alleges N.E.L. was disabled as of October 1, 2007, because of rheumatoid arthritis, a malrotated bowel, and a bowel obstruction. The claimant filed an application for supplemental security income benefits under Title XVI (42 U.S.C. § 1381 *et seq*.) on July 7, 2009, which was denied. After a hearing on April 21, 2011, ALJ John W. Belcher found N.E.L. was not disabled in a decision dated May 12, 2011. The Appeals Council denied review, so the ALJ's findings represent the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step three of the sequential evaluation. He determined N.E.L. had severe impairments, *i. e.*, rheumatoid arthritis and asthma, but that such impairments did not meet, medically equal, and were not functionally equivalent to any of the relevant listings. The ALJ concluded that N.E.L. was therefore not disabled. (Tr. 30).

## Review

The claimant contends that the ALJ erred: i) by finding that he had "less than marked" limitations in the domains of moving about and manipulating objects, and his health and physical well-being, and ii) by failing to properly analyze the credibility of

N.E.L. and his mother. The Court finds that the ALJ did fail to properly analyze the credibility of N.E.L. and his mother, Amanda Brown.

N.E.L.'s mother, Amanda Brown, completed a form entitled Function Report-Child Age 6-12th Birthday. (Tr. 179-188). In that form, Ms. Brown wrote that N.E.L.'s physical abilities were limited in walking, running, and playing sports, due to his juvenile rheumatoid arthritis, and that the pain had caused him to stop playing baseball. (Tr. 184-185). Additionally, Ms. Brown testified at the administrative hearing that her son complained to her almost daily about pain in his ankles when he gets home from school, and that he rests and often naps between thirty and forty-five minutes to compensate for the pain. (Tr. 60). She also said that he would take thirty- to forty-five minute showers in the morning to loosen his joints. (Tr. 64). She stated that he had experienced headaches that caused him to miss six days of school at the end of a grading period, so he had gotten two C's but that he was typically a straight-A student. (Tr. 62-63). She further testified that his school had recently implemented a "504 plan" at school, which allotted him extra time to get to different classes, free access to the school nurse, and the ability to bring ice packs and prop up his feet in the classroom. (Tr. 63). She testified that his pace for completing work was very slow and he easily fell behind because of it. (Tr. 72). She stated that he had participated in football and basketball, but that his coach only allowed him to play a limited amount of time and would watch him closely for signs of pain, and that he had never played more than a quarter in a basketball game or more than three minutes in a football game. (Tr. 65). She also described his medications, and stated that one of the medications made him nauseated, but that he could still attend

-4-

school.  (Tr. 67).  As to his hands, she stated that he had to take breaks every thirty minutes because of the pain.  (Tr. 67).

At the administrative hearing, N.E.L. testified at the administrative hearing, but the ALJ did not ask him to swear under oath.  (Tr. 41).  He stated that he had chores to do around his house, such as taking out the trash and getting the mail; that he usually made A's and B's on his report card, but had recently gotten C's in math and writing; and that he watches his younger sister when they play in the yard.  (Tr. 44-45).  He attributed his recent C's to missing school due to headaches but that those were now under control because he had been prescribed a pain medication for them.  (Tr. 53-55).  As to his physical impairments, he said that his feet, ankles and knees hurt most days, that the pain was always worse in the mornings but could continue into the afternoon, and that the pain made it harder for him to play sports, particularly when it was cold outside.  (Tr. 47-51). He stated that he believed his pain caused him to not play as well towards the end of his school's football season.  (Tr. 50).  He explained that some afternoons he would take a nap after school to help with his pain and fatigue. (Tr. 51-52).  N.E.L.'s third and fourth grade teachers both completed a "Teacher Questionnaire."  His third grade teacher checked boxes indicating that he did not have any problems in the relevant areas of functioning and she did not know if he took any medication, but that he had missed a lot of school due to illness.  (Tr. 375-382).  His fourth grade teacher's assessment was quite different.  She noted that he missed a lot of class for doctor's appointments and illness. Additionally, her assessment was that he had problems acquiring and using information, particularly that he often fell behind pace and had difficulty actually completing his work,

and that he had a serious problem with providing organized oral explanations, adequate descriptions, and applying problem solving skills in class discussions; that he had problems attending and completing tasks, had a very serious problem hourly with focusing long enough to finish assigned activity or task and working at reasonable pace/finishing on time, and had a serious problem daily with carrying out multi-step instructions and organizing things or school materials. (Tr. 368-369). Additionally, she indicated that the claimant had problems moving about and manipulating objects, particularly with regard to moving his body from one place to another (*e. g.* standing, balancing, shifting weight, bending, kneeling, crouching, walking, running, jumping, or climbing), as well as demonstrating strength, coordination, dexterity in activities or tasks, and managing pace of physical activities or tasks. (Tr. 371). In the last area of function, she stated that he had problems caring for himself because his medical issues interfered with his education frequently. (Tr. 372). She indicated that there were accommodations for the claimant related to his juvenile rheumatoid arthritis, irritable bowel syndrome, and asthma, that he would rest in the nurse's office during breakfast when his medication made him nauseated, and that all involved tried "to help him function as normal as possible in school [and] in activities." (Tr. 374).

As to the medical evidence, the claimant began seeing a rheumatologist in 2007 for his joint pain. (Tr. 240). On April 1, 2009, he was assessed with early onset inflammatory arthritis. (Tr. 300). A state consultative examiner assessed the claimant on September 25, 2009, with juvenile rheumatoid arthritis, on methotrexate; history of bowel obstruction, status post surgery; history of asthma/bronchitis; and history of allergic

rhinitis. (Tr. 347-348). On October 11, 2010, N.E.L.'s rheumatologist, Dr. James Jarvis wrote a letter in support of his 504 plan, noting that he may require additional time to perform tasks such as walking and using the restroom, and that thicker pencils might allow him to have a better grip. Dr. Jarvis stated that he encouraged participation in physical education when N.E.L.'s arthritis was not active, but that he would need modifications when his arthritis flared up. (Tr. 444). The previous year, Dr. Jarvis had noted the claimant had experienced increasing pain that caused "considerable difficulty with function," scheduled him for a bilateral ankle injection, and noted that N.E.L. was a "very challenging patient," in terms of treatment. (Tr. 445). On April 15, 2011, Dr. Jarvis noted that the claimant was having another flare-up of his arthritis. (Tr. 558).

The claimant argues that the ALJ failed to properly analyze his credibility. The Court agrees. Deference must be given to an ALJ's credibility determination unless there is an indication that the ALJ misread the medical evidence taken as a whole. *Casias v. Secretary of Health & Human Services,* 933 F.2d 799, 801 (10th Cir. 1991). Further, an ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4.

With regard to credibility in this case, the ALJ performed no credibility analysis. He stated that he had considered Soc. Sec. Rul. 06-03p and Soc. Sec. R. 96-7p, briefly summarized the medical evidence, and acknowledged that he must make a finding on credibility, but failed to actually perform the requisite analysis. (Tr. 24). Social Security Ruling 06-3p (SSR 06-03p) provides the relevant guidelines for the ALJ to follow in evaluating "other source" opinions from non-medical sources, like the opinion of Ms. Brown, who have not seen the claimant in their professional capacity. *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939. SSR 06-03p states, in part, that other source opinion evidence should be evaluated by considering the following factors: i) nature and extent of the relationship; ii) whether the evidence is consistent with other evidence; and iii) any other factors that tend to support or refute the evidence. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6. While the ALJ recited parts of the testimony N.E.L.'s mother, he failed to properly evaluate it in accordance with the factors set out in SSR 06-03p and gave no reasons for discrediting the lay witness statements in this case. The ALJ's task in evaluating the credibility of lay witness testimony is to determine whether the witness's opinion is sincere or insincere, and then determine what weight, if any, to ascribe to the opinion or testimony. While the ALJ did *mention* the lay witness statements, he gave no reasons for discrediting the lay witness statements in this case. *See Kepler*, 68 F.3d at 391 (The ALJ must "explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible.").

Next, the ALJ failed to properly address N.E.L.'s testimony in accordance with 20 C.F.R. § 416.928(a) ("If you are a child under age 18 and are unable to adequately

describe your symptom(s), we will accept as a statement of this symptom(s) the description given by the person who is most familiar to you, such as a parent, other relative, or guardian.") and SSR 96-7p, 1996 WL 374186 *instead of* as an lay witness opinion in accordance with SSR 06-03p, considering that N.E.L. provided very limited testimony at the administrative hearing.  Under either standard, the ALJ's analysis was insufficient because the ALJ failed to address the claimant's testimony under either analysis and although he discussed much of the medical evidence, including the claimant's testimony, the ALJ wholly failed to specify any evidence that caused him to disbelieve the claimant.  Because the ALJ failed to make a credibility determination, his decision is not based on substantial evidence.

For the reasons set forth above, the Court concludes that the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper credibility analysis of N.E.L. and N.E.L.'s mother, Amanda Brown.  If such analysis results in any adjustments to the step three findings regarding the domains of functioning, the ALJ should re-determine whether he is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence.  The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 25th day of September, 2013.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma